# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:19 CR 166 |
| ) | |
| v. ) | Judge Dan Aaron Polster |
| ) | |
| William Kozerski, ) | **SENTENCING MEMORANDUM** |
| ) | |
| Defendant. ) | |

The Court sentenced Defendant William Kozerski on September 3, 2019. (ECF No. 18.) At issue during the sentencing hearing was how to calculate "loss" for Sentencing Guidelines purposes where Defendant fraudulently procured government contracts by misrepresenting his eligibility under a set aside program. The contracts were fully performed, so the government has no actual economic loss. The Sixth Circuit has not decided the issue, and there is a split among the other Circuits that have done so.

The Court held that the government benefit rule does not apply to fraudulently procured government contracts when those contracts are fully performed. This Opinion and Order further explains the Court's analysis and decision on this unsettled area of law.

**Factual Background**

Defendant unlawfully procured VA contracts under the Service-Disabled Veteran-Owned Small Business Program ("the Program"). The Program allows Federal contracting officers to restrict competition for certain contracts to Service-Disabled Veteran-Owned Small Businesses ("SDVOSB"). To qualify for the program, a service-disabled veteran must meet the following criteria:

1. Have a service-connected disability determined by the Department of Veteran's Affairs or the Department of Defense;

2. Unconditionally own 51% of the SDVOSB, in which ownership is direct;

3. Receive 51% of profits and/or the annual distribution profits paid on the stock for the SDVOSB;

4. Control the day-to-day management, daily operations, and long-term decision making of the SDVOSB; and

5. Hold the highest officer position in the SDVOSB, to include control of the board of directors, if applicable.

Kozerski was the Director of Operations for CA Services, a limited liability company incorporated in the state of Michigan. Kozerski and CA Services fraudulently represented that J.R., a service-disabled veteran, owned CA Services. Without this fraudulent representation CA Services was not eligible to participate in the Program. Through this fraudulent representation, CA Services procured six government contracts totaling $11,891,243.45. CA Services fully and satisfactorily performed the contracts. CA Services claims it lost a little more than $600,000 on the contracts before accounting for overhead.

On March 20, 2019, Kozerski was charged with one count of wire fraud in violation of 18 U.S.C. § 1343 for obtaining government contracts fraudulently through the Service-Disabled Veteran-Owned Small Business Program. (ECF No. 4.) Kozerski entered into a plea agreement on April 2, 2019. (ECF No. 7.) A sentencing hearing was held on September 3, 2019. (ECF No. 18.)

**Discussion**

The parties submitted Sentencing Memoranda and made oral arguments concerning how to calculate loss under the Sentencing Guidelines in cases where the defendant fraudulently

procured government contracts and fully performed those contracts. Defendant argued that the amount of loss should be the face value of the contracts offset by the fair market value of the services rendered. (ECF No. 14 at 6.) The Government argued that under the government benefit rule, the amount of loss should be the face value of the contracts. (ECF No. 15 at 6.) The Sixth Circuit has not decided the issue, and there is a split among the other Circuits that have done so.

The Sentencing Guidelines increase the offense level of a theft offense based on the amount of loss involved. United States Sentencing Commission, *Guidelines Manual*, § 2B1.1(b)(1). The application notes, which are commentary to the Sentencing Guidelines, provide guidance on how to calculate loss generally and in a few specific circumstances. USSG § 2B1.1, comment. (n.3).

Generally, the amount of loss is offset by the fair market value of the services rendered (the offset rule). USSG § 2B1.1, comment. (n.3(E)(i)). However, in cases involving "government benefits," the specialized government benefit rule provides, in full:

> In a case involving government benefits (e.g., grants, loans, entitlement program payments), loss shall be considered to be not less than the value of the benefits obtained by unintended recipients or diverted to unintended uses, as the case may be. For example, if the defendant was the intended recipient of food stamps having a value of $100 but fraudulently received food stamps having a value of $150, loss is $50.

USSG § 2B1.1, comment. (n.3(F)(ii)).

After the Court carefully reviewed Defendant's and the Government's sentencing memoranda and listened to oral argument, the Court held that the government benefit rule does not apply in this case and that the amount of loss should be offset by the fair market value of the services rendered. The Court reached this conclusion on two independently sufficient grounds: (I) a government contract is not a "government benefit" for purposes of the government benefit rule

and (II) calculating loss using the government benefit rule is inconsistent with USSG § 2B1.1(b)(1) in cases where a contract was fraudulently procured and fully performed.

## I. A government contract is not a "government benefit" as the term is defined by the guideline commentary.

The Defendant argued that when calculating "loss" the Court should follow the precedent of the Third, Fifth, and Ninth Circuits in deducting the fair market value of services actually provided under a government contract. (ECF No. 14 at 4.) The Fifth and Ninth Circuits held that government benefits are unilateral transfers, not bargained-for exchanges for services rendered. *U.S. v. Harris*, 821 F.3d 589, 603 (5th Cir. 2016); *U.S. v. Martin*, 796 F.3d 1101, 1110 (9th Cir. 2015). To reach this conclusion, these Circuits highlighted the unilateral nature of the three examples provided in the government benefit rule: grants, loans, and entitlement program payments. *Id.* Because government contracts are not unilateral transfers, the Fifth and Ninth Circuits held that government contracts are not government benefits. *Id.* Accordingly, the Fifth and Ninth Circuits held that the offset rule applies, and the court is to subtract the fair market value of the services rendered when calculating the loss caused by fraudulently obtaining a government contract. *Harris*, 821 F.3d at 604; *Martin*, 796 F.3d 1110.

The Third Circuit applies a slightly different analysis. The Third Circuit held that while a government contract is a government benefit, the government benefit rule does not prevent a court from applying the offset rule. Accordingly, the amount of loss can be offset by the fair market value of the services performed. *United States v. Nagle*, 803 F.3d 167, 183 (3d Cir. 2015).

The Government argued the Court should follow the precedent of the Fourth, Seventh, and Eleventh Circuits. These Circuits have held a government contract is a government benefit. *U.S. v. Brothers Const. Co. of Ohio*, 219 F.3d 300, 318 (4th Cir. 2000); *U.S. v. Leahy*, 464 F.3d 773,

4

790 (7th Cir. 2006); *U.S. v. Maxwell*, 579 F.3d 1282, 1306 (11th Cir. 2009). To reach this conclusion, these Circuits held that an affirmative action program aimed at giving exclusive opportunities to certain groups is an entitlement program payment. *Id.* The courts further held that the government benefit rule prohibits offsetting the value of the services rendered in calculating "loss". *Id.*

This court finds the reasoning of the Fifth and Ninth Circuits persuasive. "[G]rants, loans, and entitlement programs," are all unilateral payments from the government. The government does not receive any services from the recipient.[1] Social Security is a prime example of an entitlement program. In the case of a government contract under a set aside program, as is the case here, the government agrees to pay for specific services.[2] The Court therefore concludes that the general offset rule should apply in the case of a government contract that was fully performed, as occurred in this case. As the government received services equal to the amount of money it paid, there is no economic loss to the government.

II. **Interpreting the word "loss" using the government benefit rule in the case of a fraudulently procured government contract that was fully performed is inconsistent with USSG § 2B1.1(b)(1)(F).**

Commentary such as the government benefit rule serves the purpose of interpreting the Guidelines' text. *See United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019). Commentary is only binding when "the guideline which the commentary interprets will bear the construction." *Id. quoting Stinson v. United States*, 508 U.S. 36, 46 (1993). A court need not accept an interpretation that is inconsistent with the corresponding guideline. *Id.*

Defendant argued that the offset rule should apply because calculating loss using the government benefit rule without applying the offset rule in cases involving a government contract

---

[1] The recipient of a loan, of course, is responsible to repay the loan under the terms of the agreement.

that was fully performed is inconsistent with the Guidelines. (ECF No. 14 at 5.) Specifically, Defendant argued that it is inconsistent because the Guidelines require a calculation of loss and in cases where the government contract was fully performed, no loss to the government occurred. *Id.*

The Government argued that the government benefit rule works in harmony with § 2B1.1(b)(1) and therefore controls the interpretation of "loss." (ECF No 15 at 9.) The Government further asserted that were the commentary to be invalidated, there would be absolutely no certainty or consistency on how to calculate loss. *Id.*

The Court agrees with Defendant. The government benefit rule's definition of "loss" as the entire amount diverted from the intended recipient is inconsistent with § 2B1.1(b)(1) in cases involving fraudulently procured government contracts that were fully performed. § 2B1.1(b)(1) enhances the offense level based on the amount of economic loss incurred. However, in cases where government contracts were fraudulently procured but fully performed, as is the case here, the government has suffered no economic loss.[3] The fact the Government agreed that Kozerski owed no restitution supports this conclusion. Because applying the government benefit rule to cases where government contracts were fraudulently procured and fully performed would result in sentencing a defendant based on a non-existent economic loss, the application is inconsistent with § 2B1.1(b)(1). Thus, the Court declines to apply the government benefit rule to calculate loss here.

It defies logic to contend that a defendant such as Kozerski, who fully performed contracts totaling around $12 million should be sentenced the same as someone who had stolen $12 million from the government by creating a sham contract and phony invoices, or someone who after having

---

[3] While set aside programs suffer frustration of purpose and reputational harm through fraud, these forms of noneconomic harm are not calculated into "loss". *See* USSG § 2B1.1. comment. (n.3(A)(iii)). However, the Court acknowledges that it can consider noneconomic harm in determining what sentence is appropriate.

received full payment failed to perform the contract, causing the government to pay another $12 million to a second contractor to do the work.

### III. Calculation of loss.

While the government suffered no economic loss, that does not mean that the economic loss was zero. Defendant's fraud caused economic loss to the lowest qualified bidder on the contracts. SDVOSBs were the intended recipients of the Program. If not for Defendant's fraud, the next lowest qualified bidder would have received and profited from the six contracts. Accordingly, the economic loss incurred would be the lowest qualified bidder's profit margin.

The Court could extrapolate the next highest bidder's profit margin based on the profits Defendant realized from the contracts. However, Defendant claims to have lost money on the six contracts and the Court does not have access to the expected profits of the next lowest qualified bidder.

Without any other way to extrapolate the next lowest qualified bidder's profit margin, the Court accepted Defendant's suggestion to calculate the economic loss by subtracting Defendant's bid from the next lowest bid on each contract

**IT IS SO ORDERED.**

                                               */s/ Dan Aaron Polster Sept. 17, 2019*
                                               **DAN AARON POLSTER**
                                               **UNITED STATES DISTRICT JUDGE**